# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:25-CV-01027-KDB-DCK

YIYI ZHU,

        **Plaintiff,**

        **v.**

USAA FEDERAL SAVINGS
BANK,

        **Defendant.**

**MEMORANDUM AND ORDER**

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss or Stay and Motion to Compel Arbitration (Doc. No. 3). The Court has carefully considered this motion and the parties' briefs and exhibits. Because the Parties entered into an agreement to submit the disputes that might arise out of their employer-employee relationship to arbitration, the Court will **GRANT** the motion, compel arbitration and, at the Plaintiff's request, stay this action until the arbitration is completed.

## I.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") represents "a liberal federal policy favoring arbitration agreements" and applies "to any arbitration agreement within the coverage of the [FAA]." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Bethea v. Goldman Sachs Bank USA*, No. 3:25-CV-00684-KDB-WCM, 2026 WL 776605, at *1–2 (W.D.N.C. Mar. 19, 2026). Under Section 2 of the FAA, a written arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2012). Furthermore, the Supreme Court has held that

1

"courts must rigorously enforce arbitration agreements according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) a relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute." *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016); *see also Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015). If the party requesting arbitration establishes these four factors, the party opposing arbitration must come forward with sufficient facts to place the entitlement to arbitration in dispute. *Reaves v. Conduent, Inc.*, No. 1:24CV837, 2025 WL 1615323, at *4 (M.D.N.C. June 6, 2025) (citing *Chorley*, 807 F.3d at 564). "This standard is akin to the burden on summary judgment." *Chorley*, 807 F.3d at 564. Accordingly, the [C]ourt may consider materials outside the pleadings in resolving a motion to compel arbitration.

Agreements to arbitrate are construed according to ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration. *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2011). Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002). "While parties may agree to have an arbitrator decide gateway questions of arbitrability, such an agreement does not preclude a court from deciding that a party never made an agreement to arbitrate *any* issue. That is, it does not erase the court's obligation to determine whether a contract was formed under 9 U.S.C. § 4. Thus ... allow[ing] the arbitrator to rule on questions of arbitrability ... does not obviate

the need for courts to decide the threshold issue of contract formation." *Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021) (quotation marks and ellipsis removed).If the Court sends a case to arbitration, it must stay the case if either party requests it, assuming that there are no other reasons to dismiss unrelated to the fact an issue in the case is subject to arbitration. *See Smith v. Spizzirri,* 601 U.S. 472, 475–76 (2024). For example, where all the claims at issue in a lawsuit are arbitrable, but neither party has requested a stay, the court may dismiss the lawsuit for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *Wake Cnty. Bd. of Educ. v. Dow Roofing Sys., LLC*, 792 F. Supp. 2d 897, 900 (E.D.N.C. 2011); *see also Choice Hotels Intern.*, 252 F.3d at 709-10 ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.").

## II.     FACTS AND PROCEDURAL HISTORY

Plaintiff was employed with USAA to work remotely as a Lead Quantitative Analyst from July 2022 until the termination of her employment in July 2025. (Doc. No. 1 at ¶¶ 14, 44). She alleges that USAA terminated her employment because of her sex and an impending pregnancy. (*Id*. at ¶¶ 16-46). However, the merits of Ms. Zhu's claims are not now before the Court. Rather, the Court must decide whether the parties have agreed to submit this dispute to arbitration. *See AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986) (court faced with a motion to compel arbitration does not "rule on the potential merits of the underlying claims"). So, the Court will only describe the factual allegations related to arbitration.

USAA contends that, on October 25, 2023, without any objection, Plaintiff agreed to and entered into a "The USAA Dispute Resolution Program: Arbitration and Mediation Agreement" (the "Arbitration Agreement") effective October 12, 2023. (Doc. No. 3-1 at ⁋ 4). The agreement provides mandatory arbitration as the exclusive means of resolving all employment-related

3

"Disputes" for both USAA and the employee. (Doc. No. 3-1 at Ex. B). It defines "Disputes" broadly, including all claims arising out of or related to the application for employment, hiring, or termination, as well as any other matters concerning or arising out of the employment relationship. Specifically listed are allegations of employment discrimination, harassment, or retaliation (such as sex and pregnancy discrimination) under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pregnancy Discrimination Act of 1978, 42 U.S.C.§ 2000e, et seq. ("Pregnancy Discrimination Act"), and other federal, state, or local laws. (Doc. No. 3-1 at Ex. B at ¶¶ 2(F)(4), (5), and (9)).

The Arbitration Agreement also contains a delegation clause, broadly delegating questions of arbitrability to the arbitrator: "To the maximum extent permitted by law, the Arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve any Dispute relating to interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable…" (Doc. No. 3-1 at Ex. B ¶ 8(A)). Plaintiff's electronic signature appears on the "Acknowledgement of Agreement," dated October 25, 2023 at 11:06 EDT. (Doc. No. 3-1 at Ex. A).

On December 29, 2025, Plaintiff filed this action alleging sex and pregnancy discrimination under Title VII and the Pregnancy Discrimination Act, and wrongful discharge in violation of public policy. (Doc. No. 1). In response, USAA filed its motion seeking to compel arbitration and dismiss or stay the action if arbitration is compelled. The motion has been fully briefed, including a permitted surreply by Plaintiff, and is ripe for the Court's ruling.

### III.    DISCUSSION

"Arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Thus, notwithstanding the well-established statutory and judicial support for arbitration, "a party cannot be required to submit to arbitration any dispute which he has not agreed

so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). In other words, arbitration is "strictly a matter of consent." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019); *Coinbase, Inc. v. Suski*, 602 U.S. 143, 149 (2024) ("[T]he first question in any arbitration dispute must be: What have these parties agreed to?").

Therefore, although USAA asks the Court to leave to arbitration the threshold question of contract formation, the court must "determine for itself that the parties have a contract that provides for arbitration of [at least] *some* issues." *Modern Perfection, LLC v. Bank of Am., N.A.*, 126 F.4th 235, 241 (4th Cir. 2025) (emphasis in original); *Rowland,* 993 F.3d at 258; *see also Coinbase, Inc. v. Suski*, 602 U.S. 143, 149 (2024) ("[B]efore referring a dispute to an arbitrator," … "the court determines whether a valid arbitration agreement exists."). Indeed, if the Court did not address the question of contract formation prior to compelling an arbitration, then the principle underpinning the law's support of arbitration - honoring a *contractual* agreement – would be nothing more than a circular assumption, deferring to arbitration based only on the bare possibility of an agreement.

"Whether an agreement to arbitrate was formed is ... a question of ordinary state contract law principles." *Rowland,* 993 F.3d at 258. Under North Carolina law, "[f]ormation of a valid contract requires an offer, acceptance and consideration." *Reaves*, 2025 WL 1615323, at \*3, citing *Kinesis Advert., Inc. v. Hill*, 187 N.C. App. 1, 11, 652 S.E.2d 284, 292 (2007); *see also Greene v. OneMain Fin. Grp., LLC*, No. 1:17CV848, 2018 WL 5831681, at \*4 (M.D.N.C. Nov. 7, 2018) ("[A] mutual promise between an employer and employee to be bound by arbitration is sufficient consideration to form a contract." (citing *Johnson v. Circuit City Stores*, 148 F.3d 373, 378 (4th Cir. 1998). Procedurally, if the party moving to compel arbitration produces competent evidence of "a written agreement that includes an arbitration provision that purports to cover the dispute," the party opposing arbitration "must make an unequivocal denial that an arbitration agreement

exists — and must also show sufficient facts in support," *Chorley*, 807 F.3d at 564. "This burden on the opponent only arises, however, after the proponent produces credible, admissible evidence which satisfies the Court that there was an arbitration agreement." *Dillon v. BMO Harris Bank, N.A.*, 173 F. Supp. 3d 258, 264 (M.D.N.C. 2016).

In support of the Motion, USAA submitted detailed declarations describing how USAA gave Plaintiff notice of the Arbitration Agreement (Doc. No. 14-2 at ¶¶ 8-9, Ex. B) ("On Oct. 12, all employees will receive a new OneSource task with electronic signature instructions for the Arbitration and Mediation Agreement. You will be required to sign within 14 days as a condition of continued employment at USAA.") and the fact that Plaintiff's "task notification" was marked as read and signed (Doc. No. 14-3 at ¶ 9). Further, it filed the "Final Audit Report/Signature Panel" for this signature, "showing that no changes are allowed, it is a valid certified document, the document has not been modified since it was certified, and the signer's identity is valid." (*Id.* at ¶¶ 10-11).

In response, Plaintiff's counsel argues that her client denies entering into an agreement and seeks discovery to learn more facts about the verification process. However, the Plaintiff's declaration falls far short of an "unequivocal denial" that might justify further inquiry, saying only that she "does not recall" receiving the notification, signing the document, etc. In short, Plaintiff's uncertainty is no match for Defendant's clear evidence of her assent to the agreement.[1] Therefore, the Court finds that the Parties entered into an agreement to arbitrate.

---

[1] To the extent Plaintiff opened the notice or signed the document without reading it as her declaration suggests, North Carolina law has long held that does not make the signature any less valid. *See Williams v. Williams*, 220 N.C. 806, 18 S.E.2d 364, 366 (1942) ("[O]ne who signs a paper-writing is under a duty to ascertain its contents, and in the absence of a showing that [s]he was wilfully misled or misinformed by the defendant as to these contents, or that they were kept

6

Having found that such an agreement exists, "the court must next determine whether that contract includes a 'delegation clause' that tasks the arbitrator with determining whether a particular controversy is covered by the parties' agreement to arbitrate." *Modern Perfection*, 126 F. 4th at 241. "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so .... The clear and unmistakable standard is exacting, and the presence of an expansive arbitration clause, without more, will not suffice." *Berkeley Cnty. Sch. Dist. v. HUB Int'l Ltd.*, 130 F.4th 396, 402 (4th Cir. 2025). "Accordingly, to meet the 'clear and unmistakable' standard, an agreement must contain language specifically and plainly reflecting the parties' intent to delegate disputes regarding arbitrability to an arbitrator." *Novic v. Credit One Bank, Nat'l Ass'n*, 757 F. App'x 263, 265-66 (4th Cir. 2019). There can be no credible dispute that the Arbitration Agreement contains a broad delegation provision, as quoted above. Accordingly, USAA's motion to compel arbitration will be granted, and Plaintiff's additional challenges to the validity, enforceability or applicability of the agreement to arbitrate must be delegated to the arbitrator as agreed between the Parties.

Finally, at Plaintiff's request, the Court will stay rather than dismiss this action pending completion of the arbitration.

---

from h[er] in fraudulent opposition to h[er] request, [s]he is held to have signed with full knowledge and assent as to what is therein contained.").

**IV.    ORDER**

**NOW THEREFORE IT IS ORDERED THAT:**

1.  Defendant's Motion to Compel Arbitration (Doc. No. 3) is **GRANTED**; and

2.  This matter is stayed pending completion of the ordered arbitration.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: April 22, 2026

Kenneth D. Bell
United States District Judge

8